417 P.2d 559

Steve ROER, Petitioner,

v.

The SUPERIOR COURT of the State of Arizona, IN AND FOR the COUNTY OF COCONINO, the Honorable Laurance T. Wren, Judge thereof, Albert E. Thompson, Mabel Thompson, Charles D. Scott, Ruth Scott, Ben Carpenter, Lois Carpenter, Everett C. Thomas, Jr., Charles Purtyman, Real Parties in Interest, Respondents.

I CA–CIV 409.

Court of Appeals of Arizona.

Aug. 30, 1966.

Rehearing Denied Oct. 4, 1966.

Review Denied Nov. 1, 1966.

Cavness, DeRose, Senner & Foster, by John W. Rood, Phoenix, for petitioner.

William J. Meyers, Flagstaff, for respondent.

STEVENS, Chief Judge.

The issue presented to this Court concerns the jurisdiction of the Superior Court to review the administrative decision of the Arizona State Department of Health in approving an application in relation to a sewage system, the complainants in the Superior Court not having appeared before the Department in relation to the application. The law is well settled in Arizona that judicial review of administrative decisions does not lie as a matter of right, save and except in those situations wherein the review is authorized by law. Duncan v. Superior Court, 65 Ariz. 193, 177 P.2d 374 (1947); Mendelsohn v. Superior Court, 76 Ariz. 163, 261 P.2d 983 (1953); Knape v. Brown, 86 Ariz. 158, 342 P.2d 195 (1959); Arizona Commission of Agriculture and Horticulture v. Jones, 91 Ariz. 183, 370 P.2d 665 (1962). In Mendelsohn the Arizona Supreme Court stated on page

165 of the Arizona Reports, on page 985 of 261 P.2d:

"It is settled law that the right of appeal exists only by force of positive enactment of law, Him Poy Lim v. Duncan, 65 Ariz. 370, 181 P.2d 357, and that prohibition will lie to prevent an inferior tribunal from entertaining an appeal over which it has no jurisdiction, Duncan v. Superior Court of Pinal County, 65 Ariz. 193, 177 P.2d 374."

Arizona has legislated on the subject of health control. Article 1 of Title 36 A.R.S. in part contains the following provisions:

"§ 36-101. Definitions

In this article, unless the context otherwise requires:

1. 'Board' means state board of health.

2. 'Commissioner' means commissioner of public health.

3. 'Department' means state department of health."

Section 36-105, as amended, provides in part:

"§ 36-105. Promulgation of rules and regulations

A. The board may, * * * make and amend rules from time to time as deemed necessary for the proper administration and enforcement of the laws relating to the public health.

"B. The board shall, by regulation:

\*     \*     \*     \*     \*     \*

"8. Prescribe reasonable regulations with regard to sewage collection, * *. The regulations shall prescribe minimum standards * * * and shall provide for inspection of such premises, systems and installations and for abatement as public nuisances of any collection system, * * which does not comply with the minimum standards. The regulations shall provide that the plans and specifications for all sewage collection systems, * * * be submitted for review to the state department of health. The regulations shall provide that no sewage collection system, * * * be constructed, * * * before compliance with the standards and regulations has been demonstrated by the approval of the plans and specifications by the state department of health."

Section 36-132, as amended, provides in part:

"State department of health; functions; contracts

"A. There shall be a state department of health which shall consist of the state board of health, the commissioner of public health, and the divisions of the department.

"B. The department shall, in addition to other powers and duties vested in it by law:

"1. Protect the health of the people of the state.

\*     \*     \*     \*     \*     \*

"12. Supervise sanitary engineering facilities and projects within the state, authority for which is vested in the state department of health. In the exercise of such supervision, the department shall make and enforce regulations concerning plans or specifications for construction. * * * sewage systems * * * and require that all such plans or specifications be first approved by the department before any work thereunder is commenced."

Rules and regulations have been adopted as authorized by the Arizona Legislature and these rules are not the subject of attack in the case which is before us. We do not quote from the rules. Section 1 of Regulation 3 requires that an application be made to the Department prior to any sewage system construction. The application must be on file with the Department at least 30 days prior to the date upon which the approval is desired. Detailed plans are required in connection with proposed installations of the type in question. In the event that the Department approves, it will issue a certificate of approval. There are no provisions for a hearing and we are not concerned with problems similar to the problems which faced Josephine Bennett when she was denied a

license to operate a children's care nursery as more particularly appears in the case of Bennett v. Arizona State Board of Public Welfare, 95 Ariz. 170, 388 P.2d 166 (1963). In the case before us, Roer's position is that of an applicant whose application was approved by the administrative agency. There being no provision for a hearing, there is obviously no provision for a re-hearing. There are no provisions for the giving of notice relative to the considera-tion of the application to the general pub-lic, the only "notice" required to be given being that if there is a local health depart-ment, plans must be submitted to that de-partment before they are submitted to the State Health Departmenet, and we are not confronted with an issue relative to wheth-er or not this requirement was complied with.

The specific legislation relating to the State Board of Health does not contain provisions for judicial review. Under these circumtances, the provisions of the Judicial Review of Administrative Deci-sions Act must be examined in relation to the privilege of seeking judicial review, this act being set forth in Sections 12–901 to 12–914 A.R.S.

Roer, the petitioner in the matter before this Court, filed his application for per-mission to construct a sewage system in a designated area in Coconino County and on 25 January 1966, subject to some limita-tions not material to the consideration of the issues before us, the Department issued its Certificate of Approval. The individual persons who are named herein as respond-ents are the owners or occupiers of real property in the immediate vicinity of the proposed construction. They were not given legal notice (none being provided for) of the Roer application, and they did not appear before the Department in op-position to the application. The individual respondents caused themselves to be "served" with a copy of the official action taken by the Department and on 3 March 1966, within 35 days from such service upon them, in fact within 35 days from the

issuance of the questioned order, they filed their action in the Superior Court in Coconino County seeking a review of the Department's action under the authority of the Judicial Review Act. They allege, in the language of the act, that the authoriza-tion adversely effects and impairs their legal rights and privileges. In the Supe-rior Court Roer moved to dismiss the pro-ceeding for want of jurisdiction, which mo-tion was denied on 20 April 1966. The Superior Court thereby assumed jurisdic-tion to review the administrative decision of the Department.

Roer filed his petition for a writ of pro-hibition on 8 June 1966, and pursuant to Rule 1 of the Rules of the Arizona Supreme Court, 17 A.R.S., which Rules govern the procedures followed by this Court, an in-formal hearing was thereafter held. At the conclusion of the hearing, the matter was taken under advisement and the Court requested that additional memoranda be filed. These have been furnished to the Court.

We must look to the Judicial Review Act for the answer to the question as to the presence of jurisdiction in the Superior Court to review the administrative deci-sion. This Act was adopted in the year 1954. Prior to the enactment of the Judi-cial Review Act there were some legislative enactments relating to administrative de-terminations which were silent as to the right to judicial review and there were others which specified varying methods of judicial review. In part, the Judicial Re-view of Administrative Decisions Act pro-vides:

"§ 12–901. Definitions

In this article, unless the context other-wise requires:

"1. 'Agency' or 'administrative agency' means every agency, board, * * * authorized by law * * * to adjudicate contested cases * * *", with certain exceptions not material here.

"2. 'Administrative decision' or 'deci-sion' means any decision, * * * or determination of an administrative agen-

cy rendered in a case which affects the legal rights, duties or privileges of persons and which terminates the proceeding before the administrative agency."

There then follows a provision which requires the rehearing procedure, if there be one, to be exhausted before the ruling becomes final. In the matter before us it is conceded that the order in question falls within the meaning of this subsection.

"§ 12–902. Scope of article

\* \* \* \* \* \*

"B. Unless review is sought of an administrative decision within the time and in the manner provided in this article, the parties to the proceeding before the administrative agency shall be barred from obtaining judicial review of such decision. \* \* \*"

"§ 12–904. Commencement of action

An action to review a final administrative decision shall be commenced by filing a complaint within thirty-five days from the date when a copy of the decision sought to be reviewed is served upon the party affected. \* \* \*"

"§ 12–908. Parties

In an action to review a final decision of an administrative agency, the agency and all persons, other than the plaintiff, who are parties of record in the proceedings shall be made defendants."

▆ The terms "parties" in Section 12–902, subsec. B, "party affected" in Section 12–904 and "parties of record" Section 12–908, refer to persons appearing before the administrative agency or given legal notice of the proceedings before the administrative agency which reached the decision sought to be reviewed. Unless the person seeking a judicial review falls within these terms, there is no jurisdiction in the Superior Court to entertain the purported review.

▆ In denying the motion to dismiss, the trial judge made reference to the article of Professor Davis appearing in number 1 of Volume 2 of the Arizona Law Review at page 17. On page 31 of the article, Professor Davis stated the problem as follows:

"The question of standing to sue arises when an individual, situated some distance from an administrative explosion, believes himself hurt. Those who were parties to the case before the agency are usually not too hard pressed to show an interest of theirs has been invaded by a decision. Collateral or more remotely interested persons, though, often find the judicial doors barred to them. \* \* \*"

He concluded:

"By-and-large Arizona has adopted a fairly liberal attitude with regard to standing to sue. \* \* \*"

We are unable to agree with Professor Davis' conclusion in that we believe that the Arizona case law clearly establishes that the right to seek judicial review must appear, as stated in Mendelsohn, "by force of positive enactment of law".

The Supreme Court suggested that Jones had a remedy in the Arizona Agriculture and Horticulture case, and we suggest that the individual respondents before this Court may have several remedies in the Superior Court other than proceeding under the Judicial Review Act procedure and that these several remedies could well be available to those who urge that the Department's order, and Roer's contemplated activity pursuant to that order, are detrimental to their interests. When the Legislature spoke in Section 12–901, subsec. 2 of a decision,

" \* \* \* which affects the legal rights, duties or privileges of persons \* \* \*"

the Legislature had reference to parties before the agency or persons given legal notice of a hearing. By this language, the Legislature did not intend to void the principles of due process and did not intend to preclude the entire world from taking appropriate judicial action other than through the limited recourse of Judicial Review. Whatever may be the remedies to the individual respondents herein, those remedies are not pursuant to the Judicial Review Act. To hold otherwise

would be to permit any number of people not parties to the administrative proceeding to file successive actions under the Judicial Review Act.

The Superior Court for Coconino County is without jurisdiction to entertain Cause No. 22842. The issuance of the mandate in relation to this opinion will constitute an order prohibiting the Superior Court for Coconino County from further proceeding in its Cause No. 22842.

CAMERON and DONOFRIO, JJ., concur.